IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIARA BELCHER, Independent Administrator of the Estate of ALICIA BELCHER a/k/a ALICIA WILLIAMS, deceased, | ) ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | No.   22 CV 3313 |
| UNITED STATES OF AMERICA, | ) ) | |
| *Defendant.* | ) ) | |

## COMPLAINT AT LAW

Plaintiff, by and through her attorneys, Rapoport Weisberg & Sims, P.C., states the following claim for relief against the Defendant:

## GENERAL ALLEGATIONS

1.     This claim arises out of medical negligence by the Defendant resulting in the wrongful death of 47 year-old Alicia Belcher, a/k/a Alicia Williams (hereinafter, "decedent"), on August 15, 2020, and is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80.

2.     At all relevant times, decedent received her primary medical care, including annual physical exams, at Near North Health Services Corporation/Winfield Moody Health Center (hereinafter, "Defendant's facility"), 1276 North Clybourn Ave, Chicago, Illinois.

3.     Prior to August of 2019, decedent's physical exams and lab work did not show signs or symptoms of her having diabetes, and appropriately she had never been diagnosed with diabetes up to this point in her life.

4.     On August 23, 2019, decedent underwent routine annual lab work which was sent to Defendant's facility. The lab work showed a fasting glucose level of 153 mg/dL.

5.     A fasting glucose of 126 mg/dL or higher is diagnostic for diabetes.

6.     The lab work also showed that decedent's HgbA1C at the time was 5.6%, which is consistent with her diabetes being early onset, very well under control, and easily manageable with a good prognosis at that time.

7.     On September 6, 2019, decedent had an office visit at Defendant's facility to follow up on her recent lab work. Angie Oliver, APN, was the health care provider who saw decedent that day and discussed her lab work. Nurse Oliver documented that she went over the lab results with decedent.

8.     In so doing, Nurse Oliver failed to diagnose decedent with diabetes, failed to inform decedent that she had diabetes, and failed to provide an appropriate treatment plan for monitoring and managing decedent's diabetes.

9.     About 11 months later, on July 20, 2020, decedent called Defendant's facility complaining of urinary urgency, which is a hallmark symptom of diabetes, particularly for an obese middle aged woman. Beata Janton, APN, was the health care provider that responded to decedent's call.

10.     Nurse Janton did not diagnose decedent with diabetes or inform decedent that she had diabetes based on her previous lab results.

11.     Nurse Janton also did not take any steps to investigate or rule out diabetes as the cause of decedent's complaints of urinary urgency, and instead she just told decedent not to drink so much water.

12.     Two weeks later, on August 3, 2020, decedent arrived for an office visit at Defendant's facility still complaining of urinary frequency. Decedent was tachycardic at that time with a heart rate of 107 beats/minute. Nurse Janton was again the health care provider for this visit. Nurse Janton ordered lab work including a urinalysis.

13.     The lab work showed that decedent had highly elevated ketones of 3+ and highly elevated glucose levels of 2+. These results were consistent with decedent having diabetes and were suggestive of possible diabetic ketoacidosis, which is a potentially life-threatening condition if not timely and properly treated.

14.     Elevated ketones are a sign that the patient is metabolizing protein instead of sugar due to insufficient blood sugar. Ketone levels above 0 are abnormal, and a 3+ is a very high and worrisome level.

15.     A glucose level on a urinalysis above 0 is abnormal, and decedent's 2+ level was also suggestive of her having diabetes.

16.     Following these lab results, Nurse Janton failed to diagnose decedent with diabetes, she failed to inform the decedent that she had diabetes, she failed to take any steps to investigate the severity of decedent's diabetes including the

3

possibility of decedent having diabetic ketoacidosis, and she failed to provide any treatment for decedent's diabetes.

17.     Instead, Nurse Janton misdiagnosed decedent with a urinary tract infection and prescribed her antibiotics. However, a urinary tract infection would not cause elevated ketones or glucose levels. In addition, decedent's leukocytes tested negative on the lab work, which was inconsistent with her having a urinary tract infection.

18.     Three days later on August 6, 2020, decedent called Defendant's facility again stating that her urinary frequency was still a problem despite her taking the antibiotics prescribed for her diagnosis of a urinary tract infection. Nurse Janton instructed decedent to continue her antibiotics and to return to the office in a week.

19.     On August 14, 2020, decedent arrived for her scheduled follow up visit at Defendant's facility where she again saw Nurse Janton. This time decedent complained that she was tired, which was a sign that her condition was worsening. Nurse Janton instructed decedent to continue her antibiotics and return in a week for her annual physical exam.

20.     The next day, on August 15, 2020, decedent became fatigued, lightheaded, and ultimately unresponsive. She went into cardiac arrest and could not be resuscitated. Her blood glucose when she arrived by ambulance in the emergency department at Northwestern was over 750 mg/dL, which is catastrophic. Her cause of death was determined to be diabetic ketoacidosis.

21.     Neither Nurse Oliver nor Nurse Janton ever diagnosed decedent with diabetes.

22.     Neither Nurse Oliver nor Nurse Janton ever informed decedent that she had diabetes.

23.     Neither Nurse Oliver nor Nurse Janton ever assessed the severity of decedent's diabetes.

24.     Neither Oliver nor Nurse Janton ever provided an appropriate treatment plan for decedent's diabetes.

25.     As a direct and proximate result of the failure to diagnose and treat decedent's diabetes, her diabetes progressed from an easily manageable state to an ultimately catastrophic and fatal state of diabetic ketoacidosis.

26.     At all relevant times, Defendant's facility was a Federally Qualified Health Center (FQHC) and FTCA-deemed facility receiving funding from the Department of Health and Human Services and with Federal Public Health Service (PHS) deemed status with respect to medical malpractice claims for itself as well as its agents and employees. Thus, Defendant's facility, as well as its agents/employees including Nurses Oliver and Janton, are covered under the FTCA, and pursuant to the FTCA the United States of America is properly named as the Defendant in this action.

27.     Before filing this lawsuit, pursuant to 28 U.S.C. § 2675(a), Plaintiff submitted an FTCA administrative tort claim based on the allegations herein in the amount of $50,000,000 to the appropriate agency at the U.S. Department of Health

and Human Services, which confirmed in correspondence that the administrative claim had been received for consideration and reply on December 21, 2021. The agency has failed to make final disposition of this claim within six months after it was filed, and therefore pursuant to federal law, it is deemed to have made a final denial of the claim. This action was then timely filed.

28.     This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual and this action was filed within six months of the denial of Plaintiff's administrative claim.

29.     This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1346(b)(1).

30.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendant's facility resides and does business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

31.     Plaintiff Tiara Belcher was appointed as Independent Administrator of the decedent's estate by the Circuit Court of Cook County, Illinois, Probate Division, on November 23, 2021.

32.     Exhibit A to this Complaint is an affidavit with medical report attached pursuant to 735 ILCS § 2-622 of the Illinois Code of Civil Procedure, which is incorporated by reference into this Complaint.

<u>CLAIM FOR RELIEF</u>

33.     The Plaintiff adopts and incorporates by reference the General Allegations as if fully set forth herein.

34.     At all relevant times Nurses Oliver and Janton were agents and/or employees of the Defendant acting within the course and scope of their agency and/or employment in their care and treatment of the decedent.

35.     At all relevant times, it was the duty of the Defendant, by and through the conduct of its agents and employees, to comply with the applicable standard of care in its care and treatment of decedent, yet in deviation of the standard of care, the Defendant was professionally negligent in one or more of the following ways:

   a.   Failed to timely diagnose decedent's diabetes;

   b.   Failed to inform decedent that she had diabetes;

   c.   Failed to assess the severity of decedent's diabetes;

   d.   Failed to provide appropriate treatment for decedent's diabetes;

   e.   Failed to properly assess decedent's lab results;

   f.   Misdiagnosed decedent with a urinary tract infection; and/or

   g.   Allowed decedent's diabetes to progress into a catastrophic and ultimately fatal state of diabetic ketoacidosis.

36.     As a direct and proximate result of one or more the aforementioned deviations from the standard of care, decedent suffered serious injuries that ultimately resulted in her death. Accordingly, Plaintiff seeks full compensation for all damages of a personal and pecuniary nature, including but not limited to the substantial pain and suffering of decedent before death as well as medical expenses pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act. In addition, decedent's next of kin have suffered great losses of a personal and pecuniary

nature, including but not limited to the loss of companionship and society of the decedent, mental grief, sorrow, and anguish, subjecting the Defendant to liability pursuant to 740 ILCS 180/1, *et seq.*, commonly referred to as the Wrongful Death Act.

37.    For all of these reasons, the plaintiff respectfully seeks the following:

(a) Judgment in her favor and against the Defendant for the full amount of compensatory damages under the Illinois Survival Act and Wrongful Death Act, plus all applicable interest and costs; and

(b) Such other and further relief as the Court deems appropriate under all of the facts and circumstances.

Tiara Belcher, Independent Administrator of the Estate of Alicia Belcher, a/k/a, Alicia Williams, deceased,

By:   /s/ Joshua L. Weisberg
            One of her attorneys

ATTORNEYS FOR PLAINTIFF
Joshua L. Weisberg
Melanie J. VanOverloop
RAPOPORT WEISBERG & SIMS, P.C.
20 North Clark Street, Suite 3500
Chicago, Illinois 60602
(312) 327-9880
(312) 327-9881 (fax)
jweisberg@rapoportlaw.com
mvanoverloop@rapoportlaw.com